JAMES HAWKINS APLC
JAMES R. HAWKINS, SBN 192925
GREGORY MAURO, SBN 222239
MICHAEL CALVO, SBN 314986
9880 Research Drive, Suite 200
Irvine, California 92618
Telephone: (949) 387-7200
Facsimile:  (949) 387-6676
James@jameshawkinsaplc.com
Greg@jameshawkinsaplc.com

LAW OFFICES OF ERIC A. BOYAJIAN, APC
ERIC BOYAJIAN, SBN 236335
AMARAS ZARGARIAN, SBN 293525
9301 Wilshire Blvd., Ste. 609
Beverly Hills, CA 90210
Telephone: (424) 330-2350
Facsimile: (424) 330-2351
Eric@loeab.com
Amaras@loeab.com

Attorneys for KAREN GRIGORYAN individually and on behalf of all others similarly situated

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN GRIGORYAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC, a Delaware Limited Liability Company; CEMEX, INC.,  a Louisiana Corporation, MAX PINA, an individual, and DOES 1-50, inclusive, <br><br> Defendants. | Case No. 5:18-cv-1563-R (KKx) <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT; [PROPOSED] ORDER** <br> Hearing Date:  May 20, 2019 <br> Time:  10:00 a.m. <br> Courtroom: 880 <br><br> State Ct. Compl. Filed:    Dec. 1, 2017 <br> FAC Filed:    Feb. 5, 2018 <br> SAC Filed:    June 5, 2018 <br> Case Removed:    July 20, 2018 <br><br> Presiding Judge:    Manuel L. Real |

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that, on May 20, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 880 of the United States District Court for the Central District of California before the Honorable Judge Manuel L. Real, Plaintiff KAREN GRIGORYAN ("Plaintiff"), on behalf of the general public as private attorney general, will and does hereby move this Court for entry of an Order:

1.    Approving the Private Attorneys General Act ("PAGA") settlement between Plaintiff and Defendants, CEMEX CONSTRUCITON MATERIALS PACIFIC, LLC; CEMEX, INC.; and MAX PINA ("Defendants") as fair, adequate, and reasonable, based upon the terms set forth in the Parties' Joint Stipulation of Settlement and Release ("Settlement Agreement"), including payment by Defendants of the non-reversionary Maximum Settlement Amount ("MSA") of $700,000 related to the penalties and payments to LWDA and Plaintiff and the Aggrieved Employees under the Private Attorneys General Act ("PAGA") and pursuant to Labor Code Section 558 for alleged unpaid wages and penalties;

5.    Approving an Incentive Award of $15,000 for the named Plaintiff from the MSA in recognition of his significant service to the aggrieved employees and the excellent results obtained for the aggrieved employees in this case;

6.    Approving Plaintiff's Counsel's request for up to 33.33% of the MSA as attorneys' fees (i.e., up to $233,333.33), plus reimbursement of actual litigation costs up to a maximum of $40,000 with actual costs to date of $20,865.41;

7.    Appointing ILYM Group, Inc., as the third-party Settlement Administrator for mailing notices and for claims administration, approving that no more than $15,000 with actual costs to date of $9,997.50 be deducted from the MSA for the costs of claims administration; and

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

8. Approving the Proposed Notice and Share From and ordering

they be disseminated to the aggrieved employees as provided in the Settlement

Agreement.

This motion is based upon the supporting Memorandum of Points and

Authorities, the Declarations of James Hawkins, Esq., Eric Boyajian, Esq.,

Amaras Zargarian, Esq., and Plaintiff Karen Grigoryan, the Settlement

Agreement, the Notice and Share Form, all other papers and exhibits filed

herewith and in the Court's record in this matter, and such oral and documentary

evidence as may be presented at or before the hearing on this matter.

Dated: April 22, 2019

Respectfully Submitted,

JAMES HAWKINS APLC
LAW OFFICES OF ERIC A. BOYAJIAN, APC
By: /s/ Gregory Mauro

JAMES R. HAWKINS, ESQ.
GREGORY MAURO, ESQ.
MICHAEL CALVO, ESQ.
ERIC A. BOYAJIAN, ESQ.
AMARAS ZARGARIAN, ESQ.
Attorneys for Plaintiff KAREN
GRIGORYAN, individually and on behalf
of all others similarly situated.

- 2 -

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

# <u>TABLE OF CONTENTS</u>

I.       INTRODUCTION…………………………………………….……3

II.     PROCEDURAL HISTORY………………………………………………3

III.    SUMMARY OF THE SETTLEMENT TERMS……………………….……....3

  A. Aggrieved Employees……………………………………….……………………5

  B. Distribution of Settlement Fund……………………………..…………………6

    1.  Funding of the MSA and Distribution of the Net Settlement Amount…..6

    2.  The Scope of the Release in the Settlement Agreement………………7

IV.    STANDARDS FOR APPROVAL OF PAGA SETTLEMENT……………9

V.     THE SETTLEMENT IS FAIR AND SHOULD BE APPROVED………...11

  A. The Factors Giving Rise to a Presumption of Fairness Exists……………..11

  B. The Relative Strength of the PAGA Claims and the Range of Possible Outcomes in the Litigation Strongly Favor Approval of the Settlement…..13

  C. The Settlement Avoids Risky, Complex and Lengthy Further Litigation….17

  D. The Settlement Is Fair, Adequate, and Reasonable………………………..18

  E. The Experience and Views of Plaintiff's Counsel Favor Approval of the Settlement…………………………………………………………......21

  F.  The 33.33% Fee Award Requested by Plaintiff's Counsel Is Reasonable…………………………………………………………......21

  G. The Requested Incentive Award is Reasonable……………………......22

VI.    CONCLUSION………………………………………………………………25

1

## <u>TABLE OF AUTHORITIES</u>

2

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*

3 (2009) , 46 Cal.4th 99…………………………………………………...11,14

4 *Amaral v. Cintas Corp. No. 2*

5 (2008) 163 Cal. App. 4th 1157………………….…………………………15

6 *Arias v. Superior Court* (2009)

7 46 Cal. 4th 969……………………………………………………..9,10

8 *Boyd v. Bechtel Corp.*

9 (N.D. Cal. 1979) 485 F.Supp. 610…………………………………..13

10 *Casida v. Sears Holding Corp*

11 (E.D. Cal. June 2, 2011)2012 WL 253217…………………………………..9

12 *Chu v. Wells Fargo Invs., LLC*

13 (N.D. Cal. Feb. 16, 2011) 2011 WL 672645, at *1……………………..10,20

14 *Class Plaintiffs v. City of Seattle*

15 (9th Cir. 1992) 955 F.2d 1268……………………………………..15

16 *Craft v. County of San Bernardino*,

17 624 F.Supp.2d 1113 (C.D.Cal. 2008)……………………………...……..21

18 *DCH Auto Wage and Hour Cases,* Los Angeles Superior Court,

19 Case No. JCCP4833 (May 2017)…………………………….……………10,19

20 *Elliot v. Spherion Pac. Work, LLC*

21 (C.D. Cal. 2008) 572 F.Supp.2d 1169……………………………...…13

22 *Franco v. Ruiz Food Prods.*

23 (E.D. Cal Nov. 27, 2012) 2012 WL 5941801, at *14…………………10,20

24 *Garcia v. Gordon Trucking*

25 (E.D. Cal. Oct. 31, 2012) 2012 WL 5364575…………………………10,19

26 *Garner v. State Farm Mut. Auto. Ins. Co*.,

27 No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17…………...……..23

28

*Horton v. Jones*

    (1972) 26 Cal.App.3d 952…………………………………………..…..15

*In re Mego Fin. Corp. Sec. Litig.,*

    213 F.3d 454……………………………………………….…21

*In re Pacific Enterprises Sec. Litig.*

    47 F.3d 373 (9th Cir. 1995)………………………………..21

*Iskanian, v. CLS Transportation Los Angeles, LLC*

    (2014) 58 Cal. 4th 348……………………………..……11

*Kirkorian v. Borelli*

    (N.D. Cal. 1988) 695 F.Supp. 446…………………………..……..13

*Liuy v. Merrill Lynch & Co.*

    (C.D. Cal. Nov. 10, 2014) No. CV-14-0425-PA, WL 5904904 at **3-4….14

*Louie v. Kaiser Found. Health Plan, Inc.,*

    No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18………..…...23

*Martin v. FedEx Ground Package System, Inc.,*

    No. C 06-6883 VRW, 2008 WL 5478576, at *8………………………...21

*Nat'/ Rural Telecomms. Coop. v. DIRECTV, Inc.*

    (C.D. Cal. Jan. 5, 2004) 221 F.R.D. 523………………………...17

*Nordstrom Commissions Case*

    (2010) 186 Cal.App.4th 576……………………………….10,20

*Ochoa-Hernandez v. CJADERS Foods, Inc.*

    (N.D. Ca. Apr. 2, 2010), 2010 WL 1340777, at *4………...……...10,11

*Officers for Justice v. Civil Service Comm 'n*

    (9th Cir. 1981) 688 F.2d 615………………………………17

*Pedroza v. PetSmart, Inc.*

    (C.D. Cal. Jan. 28 2013), 2013 WL 1490667…………………….9,10

*Resendez v. Bridgestone Retail Operations, LLC,*

　　　Los Angeles Superior Court, Case No. BC596892…………….………10

*Rodriguez,*

　　　563 F.3d at 958…………………………………………...….2

*Romero v. Producers Dairy Foods, Inc.,*

　　　No. 1:05 cv0484 DLB, 2007 WL 3492841, at *4………………...…..21

*Satchell v. Fed. Express Corp.*

　　　(N.D. Cal. Apr. 13, 2007) 2007 WL 1114010 at *4)……………….…..13

*Schiller v. David's Bridal, Inc.*

　　　(E.D. Cal. June 11, 2012) 2012 WL 2117001, at *14………………..10,19

*Singer v. Becton Dickinson and Co.,*

　　　No. 08-cv-821-IEG (BLM), 2010 WL 2196104, at * 8…………...……..21

*Six Mexican Workers,*

　　　904 F.2d at 1311……………………………………………..20,21

*Staffordv. Dollar Tree Stores, Inc.*

　　　(E.D. Cal. Nov. 21, 2014) 2014 WL 6633396, at *4………………..14,15

*Staton v. Boeing Co.,*

　　　327 F.3d 938 (9th Cir. 2003)………………………………....21,22

*Stuart v. RadioShack Corp.,*

　　　No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010)…....…21

*Thomas v. Aetna Health of Cal., Inc.,*

　　　(E.D. Cal. June 2, 2011) 2011 WL 2173715 at *11 ………………….…..9

*Thurman v. Bayshore Transit Management, Inc.*

　　　(2012) 203 Cal.App.4th 1112………………………………..…..15

*Van Vranken v. Atl. Richfield Co.*

　　　901 F. Supp. 294 (N.D. Cal. 1995)……………………..……………22

*Vizcaino,*

    290 F.3d at 1047…………………………………………………...…..20

*Wershba v. Apple Computer, Inc.*

    (2001) 91 Cal.App.4th 224……………………………………..………..11

*Williams v. Superior Court*

    (2017)  3 Cal. 5th 531……………………………………….……..10,20

**Statutes, Rules and Regulations**

California Civil Code section 1500…………………………………………………………7

Code of Civil Procedure § 1542……………………………………………………………8

Labor Code §226……………………………………………………………….....8,9

Labor Code §226.7…………………………………………………………………8,9

Labor Code §512……………………………………………………………………8,9

Labor Code § 558………………………………………………….…………3,4,5,7

Labor Code §2689……………………………………………………………………8,9

Labor Code § 2699(a)………………………………………………………….....9

Labor Code §2699(e)(2)…………………………………………..…………3,15

Labor Code § 2699(f)(2)…………………………………………..…………15

Labor Code § 2699G……………………………………………………………...10

Labor Code§ 2699(g)(l )(i))………………………………………………….20

Labor Code §2699(i)………………………………………………………...19

Labor Code § 2699(*l*)(2)…………………………………………....9,10

Labor Code § 2699.3(b)(4)…………………………………...………3

PAGA………………………………………………………………..passim

**Federal Rules**

Rule 26(f)…………………………………………………………………..5

49 U.S.C. 31141…………………………………………………………16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff KAREN GRIGORYAN ("Plaintiff") moves this Court for approval of settlement in this action in the amount of $700,000 which is more fully set forth below and in the Parties' Joint Stipulation of Settlement and Release, attached hereto as Exhibit 1 ("Settlement Agreement").

This motion is brought pursuant to the Labor Code § 2699.3(b)(4) which provides that:

> The superior court shall review and approve any proposed settlement of alleged violations of Division 5 (commencing with section 6300) to ensure that the settlement provisions are at least as effective as the protections or remedies provided by state and federal law or regulation for the alleged violation. The provisions of the settlement relating to health and safety laws shall be submitted to the division at the same time they are submitted to the court. The requirement shall be construed to authorize and permit the division to comment on the settlement provisions and the court shall grant the division's commentary appropriate weight.

Here, the district court assumed jurisdiction from the superior court when the action was removed. This settlement is a settlement for alleged PAGA violations pursuant to Labor Code § 558 for unpaid wages owed. This motion will be concurrently served on the LWDA. Cal. Lab. Code § 2699(e)(2).

For all the reasons outlined below, the Parties respectfully request that the Court enter an order approving the settlement.[1]

## II.    PROCEDURAL HISTORY

As alleged in the operative complaint, Plaintiff was employed by

---

[1] Further, as required by Labor Code 2699(k)(*l*)(2), on April 17, 2019, Plaintiff has provided Notice to the LWDA of the Settlement and provided the LWDA with a copy of the Settlement Agreement. (Hawkins Decl., ¶ 47).

15433373.1

1    Defendant CEMEX Construction Materials Pacific, LLC as a non-exempt driver.
2    (SAC ¶¶ 6, 8, 25).

3        Plaintiff first filed this action as a putative class action on December 1, 2017,
4    in the San Bernardino County Superior Court (Dkt. No. 1-1), alleging (1) failure to
5    pay minimum wages, (2) failure to provide meal periods, (3) failure to authorize
6    and permit rest periods, (4) failure to provide accurate itemized wage statements,
7    and (5) for unfair competition. (*Id.*); (Hawkins Decl., ¶5).

8        Plaintiff then filed a First Amended Complaint on February 5, 2018 (Dkt.
9    No. 1-3), which added a claim pursuant to the Private Attorneys General Act of
10   2004 ("PAGA") seeking civil penalties and unpaid wages pursuant to Labor Code
11   § 558. (*Id.*); (Hawkins Decl., ¶ 6).

12       On June 5, 2018, Plaintiff filed a Second Amended Complaint, to modify
13   Plaintiff's causes of action to remove Plaintiff's failure to pay wage claim after
14   meeting and conferring with Defendants' counsel regarding Defendants' potential
15   demurrer as to Plaintiff's causes of action. A stay on all discovery was issued by
16   Judge David Cohn of the San Bernardino Superior Court pending the resolution of
17   the pleadings. (Hawkins Decl., ¶ 7).

18       On July 20, 2018, Defendants removed the action (Dkt. No. 1) and
19   Plaintiff's deadline to file his Motion for Class Certification pursuant to LR 23-3
20   was set for October 18, 2018. (Hawkins Decl., ¶8)

21       Shortly after removal of this Action,  and due to the time constraints
22   imposed by LR 23-3, on August 13, 2018, the Parties filed a stipulation and
23   proposed order requesting relief form LR 23-3 (Dkt. No. 10), which the Court
24   subsequently denied on August 27, 2018. (Dkt. No. 13); (Hawkins Decl., ¶9)

25       On August 16, 2018, Plaintiff filed his Motion to Remand to State Court
26   (Dkt. No. 11). On October 16, 2018, the Court issued its Order denying Plaintiff's
27   Motion to Remand. (Dkt. No. 25); (Hawkins Decl., ¶ 10).

28       As discovery was stayed in state court, the Parties worked diligently to

- 4 -

arrange for an in person Conference of Counsel pursuant to Rule 26(f) and LR 26-1, so that formal discovery could commence in this Action. (Hawkins Decl., ¶ 11).

On August 29, 2018, the Parties held a conference of counsel pursuant to Rule 26(f). (*Id*., ¶ 12).

Following the Parties' Rule 26(f) conference of counsel, on September 5, 2018, the Parties engaged in formal written discovery. (*Id.* ¶ 13) Since the commencement of formal discovery in this matter, the Parties have engaged in extensive discovery, including the taking of Plaintiff's deposition as well as the filing of Plaintiff's Motion to Compel further responses and the production of documents. (Dkt Nos. 32 and 33); (Hawkins Decl., ¶ 14).

On September 21, 2018, Plaintiff filed his unopposed Motion for Relief From Local Rule 23-3. (Dkt. No. 15). On November 11, 2018, the Court denied Plaintiff's Motion. (Dkt. No. 30); (Hawkins Decl., ¶ 15).

As the landscape of this case changed following the Court's denial of Plaintiff's request for relief from Local Rule 23-3, Plaintiff agreed to only pursue the claims alleged in the operative SAC on a Representative basis pursuant to PAGA on behalf of the State and all other Aggrieved Employees (i.e. non-exempt ready-mix driver employees) covered by Plaintiff's PAGA claims. (*Id*. ¶ 16).

On March 5, 2019, the Parties attended private mediation, with mediator Marc Rudy. As a result of the Parties' mediation efforts, the Parties were able to find a resolution to this matter and have since settled this matter in its entirety. (Hawkins Decl., ¶ 19).

### III.  SUMMARY OF THE SETTLEMENT TERMS

#### A. Aggrieved Employees

The Aggrieved Employees who are covered by the settlement are "all current and former non-union employees identified by CEMEX Construction Materials Pacific, LLC, including Plaintiff, who worked as a non-union ready-mix driver for CEMEX Construction Materials Pacific, LLC in California, at any time,

during the time period from December 1, 2016 through the date of entry of a Court order granting approval of this Settlement." [2]

Based on the information provided by Defendants, as of the date of execution of the Settlement Agreement, there are approximately 592 Aggrieved Employees.[3]

**B. Distribution of Settlement Fund**

Under the terms of the Settlement Agreement, Defendants will pay a Maximum Settlement Amount ("MSA") of $700,000. The MSA will be the Settlement Amount less the following amounts ("Net Settlement Amount"): (1) Attorneys' fees of up to $233,333.33 to Plaintiff's counsels; (2) Litigation Costs of up to $40,000 with actual costs to date of $20,865.41 to Plaintiff's counsel; (3) Incentive Payment of $15,000 to Plaintiff; and (4) Settlement Administration Costs of 9,997.50 to ILYM Group, Inc., ("ILYM" or Settlement Administrator"). The MSA will be fully distributed to the Aggrieved Employees and the LWDA as described in Section IV. (H) of the Settlement Agreement.

**1. Funding of the MSA and Distribution of the Net Settlement Amount**

As stated in the Settlement Agreement, Defendants will fund the MSA by depositing the sum into an escrow account to be established by the Settlement Administrator (ILYM) as approved by the Court, which funds shall be held in trust for the Settlement and creates a Qualified Settlement Fund ("QSF"). Defendants shall fund the MSA within 21 calendar days after the Effective Date.

After the foregoing disbursement are made as detailed in Section IV. (H) (1)(A)-(D) of the Settlement Agreement, the remainder of the Settlement Payment after disbursing the items (1)(A)-(D) therein, shall constitute the Net Settlement Amount. Subject to the Court's approval, the Net Settlement Amount will

---

[2] Hawkins Decl., Exh. 1 (Settlement Agreement § II (1)).
[3] *Id.*

15433373.1

be allocated as follows:

    a) 50% for alleged unpaid wages and interest under Labor Coe Section 558 on an equal pro rata basis to Plaintiff and the Aggrieved Employees;

    b) 50% for alleged penalties and interest under PAGA and Labor Code Section 558, 75% of which will be paid to the LWDA, and 25% of which will be distributed on an equal pro rata basis to Plaintiff and the Aggrieved Employees.

Defendants will further pay separate and apart from the MSA its share of the employer's payroll taxes on the wage portion of the MSA. No funds will revert to CEMEX from the MSA. Any unclaimed funds or uncashed checks shall be turned over by the Settlement Administrator to the State Controller for the State of California, to be deposited in the California Unclaimed Property Fund in the name of each Aggrieved Employee who failed to timely cash his/her check, pursuant tot California Civil Code section 1500 *et seq.*, so as to permit any Aggrieved Employee who failed to timely cash his/her check to be able to claim the uncashed funds at a later date. [4]

## 2. The Scope of the Release in the Settlement Agreement

The "Released Parties":

    [M]eans Max Pina, CEMEX Construction Materials Pacific, LLC, and CEMEX, Inc., and their operating entities, divisions, subsidiaries, affiliates, facilities, parent companies or related corporate entities, past or present officers, directors, shareholders, members, legal successors and assigns, employees (whether present or former), agents, principals, heirs, representatives, accountants, auditors, consultants, attorneys, insurers and reinsurers, and their respective successors and predecessors in interest, affiliated companies, and all other representatives acting for CEMEX or in concert with CEMEX.[5]

The "Released Claims of Plaintiff":

    Representative Plaintiff irrevocably and unconditionally releases, acquits, and forever discharges CEMEX Construction Materials Pacific, LLC, CEMEX, Inc., Max Pina their past or present officers,

---

[4] Settlement Agreement §IV ( H).
[5] Settlement Agreement § II (20)

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, attorneys, insurers and reinsurers, and their respective successors and predecessors in interest, affiliates, operating entities, parent companies, divisions, subsidiaries, facilities, or parent or related corporate entities ("Released Parties") from any and all claims, demands, rights, liabilities and causes of action that he has or could have against Defendants regarding his employment through the date of execution of the parties' Settlement Agreement, as set forth herein. Such claims include any and all known and unknown claims for violation of the California Labor Code, the California Business and Professions Code, the Private Attorneys General Act, the applicable Industrial Welfare Commission Orders or any similar state or federal law, whether for economic damages, non-economic damages, liquidated damages, punitive damages, restitution, penalties, alleged unpaid wages, interest, other monies, or other relief based on any facts, circumstances, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act that have been asserted or could have been asserted based on the facts alleged in this litigation, including any and all claims that Plaintiff has arising out of or relating directly or indirectly in any manner whatsoever to the facts alleged or which could have been alleged or asserted in the Complaint or First Amended Complaint or Second Amended Complaint, including but not limited to any and all claims under PAGA and California Labor Code Sections 226, 226.7, 512, 558 and 2698, et seq., based on the facts alleged in this litigation through execution of the parties' comprehensive Settlement Agreement, as set forth herein. Plaintiff agrees that the general release set forth herein includes a general release of all claims and a waiver of rights under Code of Civil Procedure Section 1542, including but not limited to a release of any and all claims under the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act, Title VII of the Civil Rights Act, the California Fair Employment and Housing Act and the California Family Rights Act. Plaintiff shall waive the right to participate in, or to receive recovery from, any other representative action, class action or PAGA action brought by any other employee against Defendants.[6]

Defendant agrees this general release does not provide for a release of future claims arising from facts or circumstances occurring after the effective date of the parties' comprehensive Settlement Agreement. CEMEX retains the right to control hiring, firing and disciplinary decisions based on job performance, workplace standards and workplace conduct. Should Plaintiff be subject to any unlawful adverse employment action by Defendant between the time of execution of the parties' comprehensive Settlement Agreement and the Court's order granting approval of the Settlement Agreement, then Plaintiff is not precluded from challenging any such unlawful adverse employment action. Plaintiff agrees and acknowledges that it is not his intent to bring any claims for alleged violations of Labor Code Sections 226.7, 512, 558 and 2698, et seq. based on any facts arising between the time of execution of the parties' Settlement Agreement

---

[6] *Id.* § VI. (A)

- 8 -

and the date of entry of a Court order granting approval of the parties' Settlement Agreement. Notwithstanding the foregoing, Plaintiff is not waiving any rights he has or may have to claims which by law cannot be waived by signing this Agreement.

The "Released Claims of Aggrieved Employees":
    The claims to be released on a representative basis on behalf of the State of California and Aggrieved Employees shall only include all claims, charges, causes of action, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, interest, damages, unpaid wages, restitution, injunctive relief, declaratory relief and remedies of any other type that were alleged or could have been alleged pursuant to Labor Code Section 558 and PAGA, Labor Code Sections 2698, *et seq*., including any and all PAGA claims that were alleged or could have been alleged in the Complaint, First Amended Complaint or Second Amended Complaint based on alleged violations of Labor Code Sections 226.7, 512, and 558 based on the factual allegations in this litigation, from December 1, 2016 through the date of entry of a Court order granting approval of this Settlement ("Released Claims of Aggrieved Employees").[7]

## IV.   STANDARDS FOR APPROVAL OF PAGA SETTLEMENT

PAGA allows an "aggrieved employee" to bring a civil action on behalf of himself or herself and on behalf of other aggrieved employees and the State of California to recover civil penalties which, outside of PAGA, only the LWDA can assess upon and collect from an employer (Cal. Lab. Code § 2699(a)). Before bringing a civil action under PAGA, an employee must comply with California Labor Code section 2699.3. *See* Cal. Lab. Code § 2699(a).

The settlement of a PAGA action requires court approval. *See* Cal. Lab. Code § 2699(*l*)(2) ("The superior court shall review and approve any settlement of any civil action filed pursuant to this part."). However, "[a] PAGA claim asserted on a non-class representative basis . . . is not considered a class action but a law enforcement action" and therefore does not have to meet the requirements of a class action. *Casida v. Sears Holding Corp.* (E.D. Cal. June 2, 2011)2012 WL 253217 at *3; *Thomas v. Aetna Health of Cal., Inc.,* (E.D. Cal. June 2, 2011); 2011 WL 2173715 at *11; *Arias v. Superior Court* (2009), 46 Cal. 4th 969, 980-88;

---

[7] *Id.* § VI. (B)

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

*Pedroza v. PetSmart, Inc.,* (C.D. Cal. Jan. 28 2013), 2013 WL 1490667 at *15 As such, a court's review of a PAGA settlement involves analysis of several unique features that render the approval process distinct from approval of a class action settlement.

A Court reviewing a PAGA settlement need only "ensur[e] that a negotiated resolution is fair to those affected." *Williams v. Superior Court* (2017)  3 Cal. 5th 531, 549 (citing Cal. Lab. Code § 2699(*l*)(2)). Although California Labor Code section 2699(1) does not set forth the criteria on which a PAGA settlement is to be judged, courts have approved settlements of PAGA claims. *See*, e.g., *Resendez v. Bridgestone Retail Operations, LLC,* Los Angeles Superior Court, Case No. BC596892 (June 2016), *DCH Auto Wage and Hour Cases,* Los Angeles Superior Court, Case No. JCCP4833 (May 2017); *Garcia v. Gordon Trucking* (E.D. Cal. Oct. 31, 2012) 2012 WL 5364575, at *3; *Schiller v. David's Bridal, Inc.* (E.D. Cal. June 11, 2012) 2012 WL 2117001, at *14; *Chu v. Wells Fargo Invs., LLC* (N.D. Cal. Feb. 16, 2011) 2011 WL 672645, at *1; *Franco v. Ruiz Food Prods.* (E.D. Cal Nov. 27, 2012) 2012 WL 5941801, at *14; *Nordstrom Commissions Case* (2010) 186 Cal.App.4th 576, 589.

In a PAGA case, the court's focus is not the monetary amount which aggrieved employees or the State stand to receive, but instead, whether the total settlement amount achieves the PAGA's objectives. The purpose of the PAGA is "to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." See *Ochoa-Hernandez v. CJADERS Foods, Inc.* (N.D. Ca. Apr. 2, 2010), 2010 WL 1340777, at *4 (citing *Arias, supra,* 46 Cal.4th at 986). Penalties recovered under the PAGA are, in part, to "be distributed to the [LWDA] for enforcement of labor laws ... and for education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

purposes." *See* Cal. Lab. Code§ 2699G). The recovery of penalties on behalf of the State, by way of a PAGA claim, is essentially a law enforcement action. See *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) , 46 Cal.4th 99, 1003 (stating that the PAGA is a mechanism for "an aggrieved employee to recover civil penalties-for Labor Code violations-that otherwise would be sought by state labor law enforcement agencies"); *see also lskanian, v. CLS Transportation Los Angeles, LLC* (2014) 58 Cal. 4th 348, 381.

A PAGA settlement is a settlement of claims for penalties and other remedies which the LWDA could assess and collect on behalf of employees without their involvement or approval. "[U]nnamed employees need not be given notice of the PAGA claim, nor do they have the ability to opt-out of the representative PAGA claim." *Ochoa-Hernandez, supra,* 2010 WL 1340777, at *5. This renders the approval process of a PAGA settlement distinct from a class action settlement, and the Court need not employ the two-step approval process that applies to a class action settlement, under both state and federal law.

## V.    THE SETTLEMENT IS FAIR AND SHOULD BE APPROVED

The Settlement resulted from hard-fought negotiations, fulfills the objectives of the PAGA statute, is fair, adequate, and reasonable, and meets all of the criteria for approval for the reasons discussed below.

### A. The Factors Giving Rise to a Presumption of Fairness Exists

The Parties reached the settlement through arm's length negations, with the assistance of an experienced and respected mediator, Mark Rudy, at a full-day mediation. (Hawkins Decl., ¶ 19). A settlement agreement that is "the product of extensive and hard-fought adversarial negotiations between the parties" is entitled to a presumption of fairness. *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245.

The Settlement is presumptively fair because: (1) it is the product of non-collusive, arm's-length negotiations that were overseen by an independent mediator

15433373.1

knowledgeable in complex labor and employment matters; (2) it was negotiated by counsel with significant experience in similar complex labor and employment matters; and (3) it occurred after counsel for the Parties engaged in significant investigation to evaluate the strength and potential value of the PAGA claims, and the risks of litigating these claims through trial.

After engaging in extensive formal and informal discovery, the Parties participated in settlement negotiations to try to resolve the lawsuit with an experienced and respected mediator, Mark Rudy, at a full-day mediation. (Hawkins Decl., ¶ 19). During mediation, the Parties discussed all aspects of the case, including the risks and delays of further litigation, the risks to the Parties of proceeding with trial, the law relating to representative PAGA actions, Defendants' defenses concerning (i) Labor Code 512 exemption and federal preemption, (ii) Defendant's meal period waiver forms, (iii) Defendants' on-duty meal period agreements, and (iv) Defendants' payment of meal period premiums, in conjunction with the evidence produced and analyzed, and the possibility of bifurcation of discovery and/or trial and appeals, among other things. During all settlement discussions, the Parties conducted their negotiations at arm's length in an adversarial position. (*Id.*).

Based on all of the information available to the Parties and with the assistance of the experienced mediator, the Parties agree that this matter is well-suited for settlement given the strengths and weaknesses of the PAGA claims. (*Id.* ¶) Plaintiff and Plaintiff's Counsel believe that the settlement is a fair, adequate, and reasonable resolution of this matter. Plaintiff's Counsel has extensive experience in representative and class action wage-and-hour litigation and used that experience to achieve a great result for Plaintiff, the State of California, and the Aggrieved Employees.

Therefore, the Court should give considerable weight to the competency, experience, and opinion of counsel and the involvement of a neutral mediator in

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

assuring that the settlement was a product of hard-fought negotiations that was entered into without collusion. *See Kirkorian v. Borelli* (N.D. Cal. 1988) 695 F.Supp. 446, 451 (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.* (N.D. Cal. 1979) 485 F.Supp. 610, 616-17, 622 (recommendations of plaintiffs' counsel should be given a presumption of reasonableness); *see also Satchell v. Fed. Express Corp.* (N.D. Cal. Apr. 13, 2007) 2007 WL 1114010 at *4) (stating that the "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

**B. The Relative Strength of the PAGA Claims and the Range of Possible Outcomes in the Litigation Strongly Favor Approval of the Settlement**

In order for Plaintiff to prevail on the PAGA claims, he would have to prove the underlying California Labor Code violations, demonstrate that Aggrieved Employees suffered, and demonstrate that Defendants' conduct gives rise to penalties. *See,* e.g., *Elliot v. Spherion Pac. Work, LLC* (C.D. Cal. 2008) 572 F.Supp.2d 1169, 1181-82 ("Plaintiff's claim under [PAGA] is wholly dependent upon her other claims. Because all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim.").

Plaintiff's core allegation is that Defendants have systematically violated the California Labor Code by engaging in a uniform policy and systematic scheme of wage abuse against their hourly, non-exempt driver employees by, *inter alia,* failing to provide compliant meal and rest periods and associated premiums, and failing to provide complete and accurate itemized wage statements.

Although wage-and-hour actions are amenable to resolution as to a group of employees, some courts have also found that, for various reasons, the issues raised by Plaintiff-including non-compliant meal periods, non-compliant rest periods, - raise individualized issues and/or are unmanageable and thus not suitable for adjudication as to a group of employees. Defendants contended that courts have

- 13 -

15433373.1

required, and that due process requires, that the adjudication of PAGA claims meet a "manageability" requirement. *See, e.g., Liuy v. Merrill Lynch & Co.* (C.D. Cal. Nov. 10, 2014) No. CV-14-0425-PA, WL 5904904 at **3-4 (Court dismissed the PAGA claim because a multitude of individualized assessments would be necessary, making the PAGA claim unmanageable).

Defendants also maintained several defenses to Plaintiffs theory of liability, which, if successfully argued and proven, had the potential to eliminate or substantially reduce recovery. (Hawkins Decl. ¶ 25). Throughout this litigation, Defendants maintained, and continue to maintain, that they had, and continue to have, legally-compliant employment policies and practices throughout the time period at issue. Defendants deny that they ever violated any provision of the California Labor Code, including, but not limited to, those sections for which Plaintiff seeks penalties under the PAGA. (*Id.* ¶ 29). Defendants further maintain that its collective bargaining agreements ("CBAs") are controlling as related to Plaintiff and other aggrieved employee's meal break claims. (*Id.*).  As a result of the existence of these CBAs, Defendants continue to hold the position that the meal break claims at issue are barred by the CBA exemption of Labor Code Section 512(e) for all claims alleged on behalf of drivers covered by Defendants' CBAs. Defendants also assert that Plaintiff and aggrieved employees are subject to on-duty meal period agreements, and subsequent meal period waivers, and that their claims are barred by federal preemption. (*Id.*).

Defendants also challenged Plaintiff's standing as an Aggrieved Employee and denied that any of Defendants' other employees whom Plaintiff seeks to represent are aggrieved. Also, at the time this case commenced, multiple courts had taken an approach requiring a plaintiff to establish standing and face the possibility of bifurcation of discovery and/or trial of the PAGA claim. *See Amalgamated Transit Union*, supra, 46 Cal.4th at 1001 (noting that PAGA "require[ s] a plaintiff to have suffered an injury resulting from an unlawful action"); *Staffordv. Dollar*

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

*Tree Stores, Inc*. (E.D. Cal. Nov. 21, 2014) 2014 WL 6633396, at *4 (finding that judicial economy supported bifurcation because of the difficulties and inherent uncertainties of being able to establish liability with respect to a large number of potentially aggrieved employees and noted that "PAGA's public purpose would be ill-served if the court finds [the plaintiff] has not been aggrieved by a Labor Code violation"); *Horton v. Jones* (1972) 26 Cal.App.3d 952, 955 (stating that bifurcation and sequencing of litigation is allowed to avoid wasting time and money on trial when litigation of issues could be rendered moot).

Further, an important feature of PAGA is that the Court retains discretion to lower the penalties if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is "unjust, arbitrary and oppressive, or confiscatory." *See* Cal. Lab. Code § 2699(e)(2); *see also Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1136 (holding that a court may reduce the amount of PAGA penalties awarded to an employee based upon discretionary factors). Defendants maintained, and continue to maintain, that they had and continue to have, legally compliant employment policies and practices throughout the time period at issue. Defendants deny that they ever violated any provision of the California Labor Code. Even if, *arguendo,* such violations occurred, which Defendants deny, Defendants contended that said violations would only be considered "initial violations" and thus heightened "subsequent violation" penalties were not warranted. *See* Cal. Lab. Code § 2699(f)(2); *see also Amaral v. Cintas Corp. No. 2* (2008) 163 Cal. App. 4th 1157, 1208-09 ("Until the employer has been notified that it is violating a Labor Code provision [. . . ], the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties.").

Defendants also contended that, with respect to PAGA claims, the Court was unlikely to assess cumulative penalties for the maximum number of possible, separate California Labor Code violations, because it would be unjust, arbitrary,

- 15 -

15433373.1

oppressive, and/or confiscatory, especially where certain conduct may be regulated by multiple provisions of the California Labor Code that are interrelated and work in tandem. As such, Defendants contended that cumulative penalties and heightened penalties would be unjust, arbitrary, oppressive, and confiscatory.

Aside from the attacks on the merits of the Plaintiff's claims, Plaintiff's meal and rest break and wage/hour claims may be subject to federal preemption based on the December 21, 2018 Federal Motor Carrier Safety Administration ("FMCSA") granting the American Trucking Association ("ATA") petition finding that California's meal and rest break laws are preempted under 49 U.S.C. 31141. (Section 31141 for property-carrying commercial drivers that are covered by the Department of Transportation ("DOT")).  On March 22, 2019, the FMCSA issued a clarifying decision stating that its December 21, 2018 decision "precludes courts from granting relief pursuant to the preempted State law or regulation at any time following issuance of the decision, regardless of whether the conduct underlying the lawsuit  occurred before or after the decision was issued, and regardless of whether the  lawsuit was filed before or after the decision was issued." If such regulations pass judicial scrutiny at the 9th Circuit or U.S. Supreme Court, which is certainly already occurring, this case would immediately be worthless. Accordingly, Defendants can potentially challenge Plaintiff's claims due to the FMSCA opinion of retroactive preemptive legislation. (Hawkins Decl., ¶ 34).

Ultimately, Defendants denied, and continue to deny, that the lawsuit is appropriate for representative treatment for any purpose other than the settlement. Defendants contended that the work experiences of the hourly, non-exempt driver employees varied because they have different job positions and work statuses of union versus non-union drivers, with varying responsibilities, and that these factors would pose a challenge to proving injuries to all of the Aggrieved Employees and to the manageability and viability of representative adjudication of the PAGA claims. While Plaintiff maintains that his PAGA claims have merit, in reaching the

- 16 -

15433373.1

settlement, Plaintiff and his counsel took into account the strengths and
weaknesses of each side's position and the uncertainty of how the case might have
concluded as litigation continued, at trial, and/or appeals. (Hawkins Decl., ¶¶. 22-
30).

### C. The Settlement Avoids Risky, Complex and Lengthy Further Litigation

Courts favor the voluntary conciliation and settlement of complex litigation.
*Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276. Generally,
"unless the settlement is clearly inadequate, its acceptance and approval are
preferable to lengthy and expensive litigation with uncertain results." *Nat'/ Rural
Telecomms. Coop. v. DIRECTV, Inc.* (C.D. Cal. Jan. 5, 2004) 221 F.R.D. 523, 526
(citation omitted).  Both sides used the pre-mediation time period to investigate the
veracity, strength, and scope of the PAGA claims.  (Hawkins Decl., ¶ 19). Prior to
mediation, Plaintiff's Counsel propounded multiple sets of written discovery
requests on Defendants and reviewed Defendants' responses thereto defended the
deposition of Plaintiff, worked with Plaintiff to review and provide responses to
written discovery requests propounded by Defendants, and conducted informal
discovery and exchange of information with Defense Counsel within the context of
mediation. (*Id. ¶* 14).

In addition, the Parties informally exchanged documents and data relevant to
Plaintiffs claims and Defendants' defenses thereto, including, and not limited to,
Plaintiffs employment records (including, among other things, job descriptions and
an arbitration agreement), payroll data, workweek data, and Defendants' operations
and employment policies, and procedures. Counsel for the Parties undertook
significant investigation, and also invested time reviewing and analyzing relevant
documents and data to evaluate Plaintiffs claims, including, and not limited to,
calculating the potential monetary recovery under PAGA. (*Id. ¶¶* 14 - 34).

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

Had the case not settled, the Parties would have conducted additional extensive formal discovery, including additional written discovery as wells as multiple depositions of party and percipient witnesses all over the State of California, to prepare the case for trial. From the inception of this litigation, Defendants indicated that they would aggressively litigate this case. Even if Defendants failed to succeed on their defenses, litigating a complex PAGA action is inherently expensive, and the litigation could continue beyond entry of judgment if either party were to appeal adverse rulings. (*Id.* ¶ 24). Additionally, there is a real possibility that Plaintiff would recover nothing, either for himself or on behalf of the State of California or other Aggrieved Employees, after years of costly and labor-intensive litigation. Avoiding these risks and the likelihood of future contentious litigation, which would involve significant costs, favors settlement.

**D. The Settlement Is Fair, Adequate, and Reasonable**

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Service Comm 'n* (9th Cir. 1981) 688 F.2d 615, 624. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625.  The settlement provides significant benefits to the State of California and the Aggrieved Employees and falls well-within the range of acceptable settlements under the circumstances. Under the Agreement, Defendants have agreed to pay a Maximum Settlement Amount of $700,000, which encompasses the Net Settlement Amount, Attorneys' Fees, Litigation Costs, Settlement Administration Costs, and Incentive Payment Fee. Subject to approval by the Court, the following amounts will be subtracted from the Maximum Settlement Amount to yield the Net Settlement Amount: (1) Attorneys' Fees in an amount not to exceed $233,333.33; (2) Litigation Costs in the amount not to exceed $40,000 with actual litigation costs of $20,865.41; (3) the Settlement Administration Costs not to exceed to $15,000 with actual administration costs of

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

$9,997.50; and (4) Incentive Payment of $15,000. The Net Settlement Amount is currently estimated to be $420,803.76, of which an estimated $263,001.88 is to be distributed to Aggrieved Employees on a *pro rata* basis, and $157,801.41 is to be distributed to the LWDA. As a result each aggrieved employee is expected to receive $444.26. (Hawkins Decl., ¶¶ 21-22, 37).

Through the analysis and review of Defendants' timekeeping and payroll record production, as well as Plaintiff's own evidence, Plaintiff's Counsel estimated Defendant's potential maximum damages and penalties exposure on PAGA claims at $4,200,000 (approximately 21,000 workweeks x $200 penalties). According to Plaintiff's counsel's calculations, there are a total of approximately 592 Aggrieved Employees with an estimated 21,000 pay periods with approximately 105,000 work shifts, with an average hourly of rate approximately $22.93 per hour.    Under the LC 558 claim Plaintiff's calculated damages as follows: approximately 105,000 (work shifts) X $5.73 (1/4 hour wages owed per work shift) X 70% violation rate = $421,155. (*Id.* ¶ 32).

Thus, the total damages and penalties for the PAGA and Labor Code 558 claims are approximately $4,621,155.00.  However, Assuming a risk value ratio of approximately 50% for the risks described here, Counsel estimates the overall realistic maximum value at $2,310,577.5. Thus, Counsel asserts that the Maximum Settlement Amount results in an approximate recovery of 33% of the total possible maximum recovery. (*Id.* ¶ 33).

There is no reason to doubt the fairness of the proposed plan of allocation of the Net Settlement Amount as it fully complies with California Labor Code sections 558 and 2699(i). The Settlement is a compromise of highly disputed claims. Plaintiff and his counsel recognize the expense and length of continued proceedings necessary to litigate the matter through trial and any possible appeals. Plaintiff and his counsel have also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

litigation. Plaintiff and his counsel are also aware of the burdens of proof necessary to establish liability, both generally and in response to Defendants' defenses thereto, and the difficulties in establishing Defendants' liability for, and the right to recover, penalties on behalf of Plaintiff, the State of California, and the other Aggrieved Employees. Plaintiff and his counsel have also taken into account Defendants' agreement to enter into a settlement that confers significant relief upon the Aggrieved Employees and the State of California. (*See generally* Hawkins, Decl.)

Considering all of the facts in this case, Plaintiff and his counsel have determined that the settlement represents a fair, adequate, and reasonable resolution of the PAGA claims, and that it is in the best interests of the Aggrieved Employees and the State of California. The result achieved in this case, and the monetary recovery provided by this settlement are well-within the range of an acceptable settlement under the circumstances, especially when compared to the settlement of PAGA claims in other cases. *See, e.g., DCH Auto Wage and Hour Cases,* Los Angeles Superior Court, Case No. JCCP4833 (May 2017) (approving the amount of $15,000 out of $4 million toward settlement of PAGA claims); *Garcia, supra,* 201 WL 5364575, at *3 (approving the amount of $10,000 out of $3.7 million toward settlement of PAGA claims); *Schiller, supra,* 2012 WL 2117001, at *14 (approving the amount of $10,000 out of $518,245 toward settlement of PAGA claims); *Chu, supra,* 2011 WL 672645, at *1 (approving the amount of $10,000 out of $6.9 million toward settlement of PAGA claims); *Franco, supra,* 2012 WL 5941801, at *14 (approving the amount of $10,000 out of $2.5 million toward settlement of PAGA claims); *Nordstrom Commissions Case, supra,* at 589 (finding no abuse of discretion by the trial court in approving a settlement that allocates $0 toward the settlement of PAGA claims that were at issue in the lawsuit). Here, the value obtained for settlement of the PAGA claims is

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

very significant, and it will be distributed in accordance with and in fulfillment of the objectives of the PAGA statute.

### E. The Experience and Views of Plaintiff's Counsel Favor Approval of the Settlement

Plaintiff's Counsel is highly experienced in complex representative and class action wage-and-hour litigation. (Hawkins Decl. ¶ 41); (Boyajian Decl., ¶¶ 4-11). In the view of Plaintiff's Counsel, the benefit conferred by the settlement is eminently fair and reasonable, and is in the best interests of the State and the Aggrieved Employees in light of the risk, delay, and uncertainty of continued litigation and the substantial monetary benefits provided for by the settlement. (Hawkins Decl.. ¶ 20). Furthermore, courts have acknowledged that "the interests of plaintiff, counsel and other potentially aggrieved employees are largely aligned. All stand to gain from proving as convincingly as possible as many Labor Code violations as the evidence will sustain[.]" *Williams, supra,* 548 (citing Cal. Lab. Code§ 2699(g)(l )(i)).

### F. The 33.33% Fee Award and Cost Requested by Plaintiff's Counsels Is Reasonable

The Settlement contemplates that Plaintiff will seek attorneys' fees equal to 33.33% of the maximum Settlement amount (*i.e.*, $233,333.33)[8] In fact, Plaintiff's Counsel incurred fees of approximately $296,980, (Hawkins Decl., ¶ 45); (Boyajian Decl., ¶ 12), yet despite this, Plaintiff's counsel is seeking $63,000 less than the fees actually incurred. The Ninth Circuit has held that 25 percent of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method. (*See Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers*, 904 F.2d at 1311 (recognizing "25 percent standard award"). In fact, district courts have often granted—and the Ninth Circuit has affirmed—awards of attorneys' fees above 30 percent. (*See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457

---

[8] Settlement Agreement § IV (H)(2)

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

(9th Cir. 2000) (affirming fee award of 33 1/3% of fund); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding attorneys' fees equal to 33% of settlement fund).

Indeed, in cases where the common fund is under $10 million—as is the case here—courts routinely award attorneys' fees above the 25% benchmark. *See Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1127 (C.D.Cal. 2008) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark); *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (fee award of 1/3 of the total settlement was "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits."); *Singer v. Becton Dickinson and Co*., No. 08-cv-821-IEG (BLM), 2010 WL 2196104, at * 8 (S.D. Cal. June 1, 2010) (approving fee award of 33.33% of the common fund); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05 cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ("[f]ee awards in class actions average around one-third of the recovery."); *Martin v. FedEx Ground Package System, Inc*., No. C 06-6883 VRW, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (approving fees of 1/3.  The fees sought are reasonable in light of the result achieved for the ligitation. Underscoring the benefit conferred upon the Class is the fact that litigating wage and hour class actions is inherently risky, especially where federal retroactive preemption is a significant possibility, and where some courts have denied class certification. (*Id.*).

Plaintiff's counsels are also requesting the reimbursement of costs in the amount of $20,865.41, which is fair and reasonable. (Hawkins Decl., ¶ 46, Exh. 2); (Boyajian Decl., Exh. 2).

**G. The Requested Incentive Award Is Reasonable**

Named plaintiffs " are eligible for reasonable incentive payments." *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003). Such awards "are intended to

15433373.1

compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977. Courts may also consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff respectfully requests an incentive award in an amount of $15,000, to recognize his very significant contributions to the aggrieved employees, the reputational risks he undertook, the time and efforts expended on behalf of the aggrieved employees, his broader waiver of claims outside of the scope of the release of Aggrieved Employee claims addressed in the Settlement, his acceptance of the financial risk in pursuing this litigation, and the significant monetary and non-monetary accomplishments of this case. The requested incentive awards here are justified because (1) Plaintiff was significantly more active in this litigation and spent substantially more time than typical for representatives in similar cases, and (3)  the recovery in this case per aggrieved employee is reasonable considering all the risks detailed herein. As evidenced by Plaintiff's declaration it is estimated that Plaintiff Grigoryan has spent approximately of **30 hours** to date participating in this matter. (Grigoryan Decl., ¶¶ 7-12).   Plaintiff has engaged in activities

- 23 -

15433373.1

including numerous meetings and phone calls with counsel, gathering and providing documents and other information to counsel. Plaintiff also participated in the mediations  via telephone, and had a full-day deposition taken by Defendants, and spent a significant amount of time preparing for his depositions and reviewing their transcripts afterwards. (Hawkins Decl., ¶ 41); (Grigoryan Decl., ¶¶ 7-12) Plaintiff has been instrumental to prosecuting this case, and has participated in all aspects of the litigation.  His presence and work provided for the strengthened value of the case. (Hawkins Decl., ¶ 39).

Plaintiff faced significant risks both financially and reputationally. Had Defendant prevailed in this action, Plaintiff may have been required to pay Defendant's costs. Moreover, by putting his name on the face of this action against a major trucking company in the United States, Plaintiff has gained notoriety, and risk facing difficulty finding future positions in the trucking industry. Plaintiffs have vigorously defended the aggrieved employees, and his efforts should be duly rewarded.

The incentive award requested by Plaintiff represents a small fraction of the overall settlement value.  Therefore, when examined in the context of the MSA that was obtained on behalf of the aggrieved employees as a direct result of Plaintiff's undertaking the role of PAGA Representatives, the requested Incentive Award is proportionally modest, fair, and reasonable.

The requested Awards also fall within the range of reasonable incentive payments awarded to Representatives in similar actions. *See e.g. Louie v. Kaiser Found. Health Plan, Inc*., No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008) (approving "$25,000 incentive award for each Class Representative" in wage an hour settlement); *Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

demonstrated a strong commitment to the class"). Here, Plaintiff has demonstrated an extraordinary commitment to the Class, which resulted in a fair and reasonable settlement. He should be rewarded accordingly with $15,000 Incentive Award, which fall within the range of reasonableness.

## VI.    **CONCLUSION**

The settlement is fair, adequate, and reasonable, as it represents a reasoned compromise of disputed claims that has been reached through arm's length negotiations, and considers the risks, complexity, and expense of further litigation. For these reasons and the reasons above, the Parties request this Court enter an order approving the settlement.

Dated: April 22, 2019

Respectfully Submitted,

JAMES HAWKINS APLC
LAW OFFICES OF ERIC A. BOYAJIAN, APC
By: /s/ Gregory Mauro
JAMES R. HAWKINS, ESQ.
GREGORY MAURO, ESQ.
MICHAEL CALVO, ESQ.
ERIC A. BOYAJIAN, ESQ.
AMARAS ZARGARIAN, ESQ.
Attorneys for Plaintiff KAREN
GRIGORYAN, individually and on behalf
of all others similarly situated.

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2019  I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, for the Central District of California using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.


Dated:   April 22, 2019          /s/ Gregory Mauro
                                 Gregory Mauro

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

15433373.1